# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 1271 | DATE | July 2, 2003 |
| CASE TITLE | Morris Jones  v  Jo Ann B. Barnhart, commissioner | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's motion for summary judgment is denied. This Court affirms the decision of the Commissioner denying SSI benefits.
Status hearing date of 7/17/03 is stricken.

(11) ● [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MORRIS JONES,   )
                )
    Plaintiff,  )
                )    No.    02 C 1271
    v.          )
                )    Judge Robert W. Gettleman
JO ANN B. BARNHART, Commissioner of   )
Social Security,   )
                )
    Defendant.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Morris Jones filed this action against Jo Anne Barnhart, Commissioner of the Social Security Administration, challenging the denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. The court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. After a thorough evaluation of the Administrative Record as well as the pleadings and memorandum on file, plaintiff's motion for summary judgment is denied, and the Commissioner's denial of SSI benefits is affirmed.

### Factual Background

On Feb. 24, 1999, plaintiff filed an application for SSI and alleged he was physically disabled as of June 10, 1989. His application was denied initially and on reconsideration. On October 26, 2000, a hearing was held before an Administrative Law Judge ("ALJ"), who issued an opinion on January 18, 2001, also denying the application. On December 28, 2001, the

18

Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff timely appealed the denial to this court.

Plaintiff was born on June 2, 1953, and was 47 years old at the time of the hearing. He has completed school through the 12th grade and graduated high school in 1972. He completed some vocational mechanics training. Plaintiff never married and has six children. He worked as a truck driver from 1985 to 1989 and from 1991 to 1993. Plaintiff has testified that he has not looked for work or obtained a job from 1993 to the time of this appeal.

At the hearing plaintiff claimed specific impairments of diabetes mellitus, migraine headaches, high blood pressure, chronic peptic ulcer, back problems, depression, pancreatitis, meningitis, generalized fatigue, and a reduced ability to carry on daily living tasks. Plaintiff testified that he is unable to continue work as a truck driver due to constant pain, nausea, a severe stomach problem, and reoccurring pain in the area of his ribs and pancreas. Plaintiff has testified he stopped using heroin approximately eight years ago and is only an occasional beer drinker.

Plaintiff also complained of tingling in his legs, inability to sleep, reduced appetite and weight loss, lack of interest in activities, feelings of worthlessness and depression, inability to lift over his head, alienation of friends, constant sweating, numbness in his feet, swelling, and an inability to do his daily chores.

The medical evidence demonstrated that plaintiff has diabetes mellitus, peptic ulcer disease, hypertension, gastritis, high blood pressure, pancreatitis, depression, and treated meningococcemia with no residual effect. In November, 1995, plaintiff was admitted to Provident Hospital of Cook County for acute pancreatitis and diagnosed with ethanol abuse,

heroin abuse, and pneumonia. In 1998, medical records from Lincoln Correctional Center indicate plaintiff's complaints of back and abdominal pain and a diagnosis of gastritis.

On April 8, 1999, Dr. Eric Tchaptchet, after performing an Internal Medicine Evaluation for the Bureau of Disability Determination Services, reported that plaintiff complained of cancer of the pancreas and diabetes. Plaintiff denied the use of tobacco or illicit drugs. Dr. Tchaptchet's examination revealed uncontrolled diabetes but no acute findings or symptoms of pancreatic cancer. Dr. Tchaptchet found plaintiff to have no organomegaly, ascites, or hernia. Plaintiff had no limitation in movement of any joint and both gross and fine hand manipulation were normal. Plaintiff's gait and reflexes were found normal and plaintiff had no movement limitation of cervical, dorsal or lumbar spine.

In June, 1999, Dr. Ramakrishna Medala, a state agency physician, performed a physical residual functional capacity ("RFC") assessment of plaintiff. Dr. Medala reported no acute finding, hernia, weight loss, vomiting, history of alcohol abuse, or other symptoms other than epigastric pain.

In August, 1999, plaintiff was treated at University of Chicago Hospital for complaints of abdominal pain and pain in his wrists. The hospital found plaintiff's extremities showed signs of clubbing, his wrists were tender and swollen, he had limited range of motion in elbow, he had symptoms consistent with opiate withdrawal, and his abdomen was benign. Blood cultures were taken from plaintiff and he was discharged with improved symptoms and neck stiffness. The blood cultures were found to be positive for meningococcemia and plaintiff was re-admitted and treated for meningococcemia, presumed meningitis, and diabetes.

On November 22, 1999, Dr. Martin Fields performed a Psychiatric Evaluation of the plaintiff for the Bureau of Disability Determination Services. Plaintiff had never been to a psychiatrist or psychiatric hospital. Dr. Fields reported that plaintiff said he had never had a psychiatric problem and had never used drugs or alcohol. Plaintiff told Dr. Fields that his last employer was Lane[sic] Trucking for whom he worked for about four years ending in 1990, and that he left because the company closed and he could not find another job. Plaintiff complained of auditory hallucinations, back pain, depression, and suicidal thoughts. Dr. Fields found that plaintiff was oriented and did not complain of delusions, confusion, or problems with impulse control. Dr. Fields diagnosed plaintiff with significant depression with melancholia, and assigned a GAF score of 30. A GAF score of 100 is superior functioning and a score of 80 indicates good functioning in all areas. Dr. Fields reported, moreover, "there are psychotic features seeming to contribute to plaintiff being impaired and unable to function, although physical factors seemed to be the primary impediment". He characterized plaintiff's history of present illness as provided primarily by plaintiff and marginally reliable.

On December 9, 1999, state agency psychologist Dr. Kirk Boyenga performed a mental residual functional capacity assessment on plaintiff. Dr. Boyenga concluded that plaintiff experienced a possible affective disorder, reporting that plaintiff had a moderate restriction of activities of daily living, a slight difficulty in maintaining social functioning, and often experienced deficiencies of concentration, persistence or pace, resulting in a failure to complete tasks in a timely manner, but that he never experiences episodes of deterioration or decompensation in work or work-like settings causing an individual to withdraw from the situation. He also noted that plaintiff had not complained of depression in previous examinations

4

and questioned plaintiff's credibility in light of this and discrepancies in reports of drug and alcohol usage.

On July 26, 2000, Dr. Senora Nelson, plaintiff's treating physician, performed a physical capacities evaluation on plaintiff. Using a physical exam and plaintiff's limitation of movement as a basis for opinion, Dr. Nelson found that plaintiff could never bend due to a low back injury, stoop, push, pull, perform fine manipulations, or reach above shoulder level. The doctor indicated that plaintiff could carry 10 lbs. frequently and 20 lbs. occasionally, perform gross manipulations, and operate foot controls.

At the hearing on Oct 26, 2000, medical examiner Dr. Bernard Stevens testified that plaintiff had no physical or mental impairments. He concluded that although diagnoses of diabetes, hypertension, and peptic ulcer disease exist in the medical history, these are not medically determinable impairments affecting his ability to perform work. Upon review of relevant evidence in the case, Dr. Stevens was unable to find evidence of severe back impairment or abnormalities.

The ALJ concluded that there is no evidence of end organ damage from plaintiff's problems with diabetes mellitus, peptic ulcer disease, hypertension, and pancreatitis, and that these impairments do not impair the claimant's ability to perform work. With respect to plaintiff's back, the ALJ concluded, "there is insufficient evidence whatsoever of back impairment." With respect to meningococcemia, the ALJ concluded that plaintiff "suffered no residuals from this infection." The ALJ noted that plaintiff has not had aggressive treatment recommended for migraines, nor did plaintiff complain of migraine headaches to consultative examiners. With respect to plaintiff's depression, the ALJ gave no weight to Dr. Fields'

psychiatric opinion "as it was based mainly on claimant's allegations which are not consistent with the rest of the evidence." The ALJ noted that plaintiff had never received treatment for depression, treating sources make no mention of this problem, and the medical evidence contains only one complaint of depression by plaintiff. The ALJ did not give controlling weight to plaintiff's treating physician's, Dr. Nelson's, assessment of plaintiff's ability to perform work-related tasks, because it was "not supported by objective findings." The ALJ concluded there is no support given for plaintiff's limitations and that Dr. Nelson failed to provide treatment notes for plaintiff's back impairment or mention she was treating plaintiff for a back problem.

Additionally, the ALJ concluded that plaintiff is not credible and noted that plaintiff reported he had stopped working because the company closed and not due to impairments. The ALJ further cites plaintiff's unsubstantiated claims of arthritis, denial of drug and alcohol use, as well as inconsistencies in reporting of hallucinations, work history, and time in the penitentiary.

Based on her evaluation of the evidence the ALJ concluded that, under 20 C.F.R. §§ 416.921, 416.920(c), plaintiff does not have a severe impairment or impairments that significantly impair his ability to do basic work-related activities and is, therefore, not under a "disability" as defined by the Social Security Act.

### Discussion

Plaintiff contends that the ALJ's finding that he is not disabled is contrary to law, and that the ALJ's finding that plaintiff did not have a severe physical or mental impairment is not supported by substantial evidence. Specifically, plaintiff contends that the standard for severity of disability is a threshold requirement met by plaintiff's impairments and supported by the medical evidence provided by his treating physicians.

6

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This standard of review recognizes that the ALJ is entrusted to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Perales*, 402 U.S. at 399-400. A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the agency to decide whether a claimant is or is not disabled. *Diaz*, 55 F.3d at 305; *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). If a court determines that the ALJ's decision is not supported by substantial evidence and should be reversed, a remand for further proceedings, not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the plaintiff is totally disabled. *See Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) (the determination to award or deny benefits "is essentially a factual finding best left for the [Commissioner] to address in the first instance, unless the record can yield but one supportable conclusion.").

Plaintiff challenges the ALJ's finding that he was not under a disability because his physical and mental impairments alone or in combination were not severe. Impairment is not severe if it does not significantly limit a person's physical or mental ability to do basic work activities for at least a 12-month consecutive period. 20 C.F.R. § 416.921. That is, severity

7

means an individual is unable to engage in significant gainful activity ("SGA") by reason of a medically determinable impairment. Plaintiff has medically determined physical impairments of diabetes mellitus, hypertension, peptic ulcer disease, and pancreatitis. The ALJ noted this in his findings, but concluded that these impairments do not significantly limit plaintiff's ability to perform basic work activities, as Dr. Stevens, the medical examiner present at the hearing had testified. The ALJ also noted that there was no evidence of end organ damage from these problems. The record provides evidence that these problems had been treated and they are controlled or controllable.

Plaintiff argues that he has a severe back impairment. The ALJ concluded there was insufficient evidence of back impairment. Opinions of plaintiff's treating doctor and all other physicians who examined plaintiff's back reported normal findings.

Plaintiff argues that the University of Chicago diagnoses of clubbing of extremities, limited range of motion, and swollen wrists meet the threshold test for severe impairment. Although the ALJ did not specifically address this diagnosis, the record indicates that plaintiff was treated at University of Chicago hospital and discharged with improved symptoms and neck stiffness. There is no evidence in the record of the duration of plaintiff's clubbing impairment before or beyond the treatment period.

Plaintiff also argues that Dr. Boyenga's diagnosis of an affective disorder causing deficiencies in concentration and social functioning meet the threshold requirement for severity of impairment. The ALJ concluded that the Dec. 9, 1999, opinion of Dr. Boyenga should not be given great weight because it was based on the Nov. 22, 1999, consultative examination of Dr. Fields that the ALJ determined should be given no weight. Dr. Boyenga reported that plaintiff

8

had a moderate restriction of activities of daily living, a slight difficulty in maintaining social functioning, often experiences deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. Dr. Boyenga further noted that plaintiff never experiences episodes of deterioration or decompensation in work or work-like settings that cause the individual to withdraw from the situation. He also reported that although plaintiff "experiences a possible affective disorder credibility is in question in light of the absence of any complaints or signs of depression during 2 rather thorough workups ... memory and concentration are impaired, but allow performance of simple tasks". Dr. Boyenga concluded that plaintiff's "social skills are impaired but allow settings with reduced public contact" and plaintiff's "adaptation abilities are intact."

Plaintiff further challenges the ALJ's finding that he does not have a severe mental impairment despite evidence of depression and hallucinations. In reaching this finding, the ALJ properly recognized that plaintiff had not been treated for either impairment, the impairment was not mentioned previously by treating sources or plaintiff, and both impairments were inconsistent with the rest of the evidence.

A reasonable mind could conclude from the evidence in record that plaintiff's impairments alone or in combination have no more than a minimal effect on plaintiff's ability to perform basic work activities for at least a 12 month consecutive period, and thus are not severe. It is plaintiff's burden to establish that the claimed impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). He has failed to carry that burden.

Plaintiff also challenges the ALJ's finding that the opinions of his treating and examining physician's are not to be given controlling weight. Plaintiff argues that the ALJ improperly gave

9

no weight to Dr. Fields' psychiatric examination. The ALJ noted, however, that Dr. Field's opinion was given no weight because it was based mainly on information given to Dr. Fields by plaintiff that was inconsistent with the rest of the evidence. The opinion of treating doctors must be given special deference unless the treating source's medical opinion is inconsistent with other substantial evidence in the record. *Grindle v. Sullivan*, 774 F. Supp. 1501 (N.D. Ill. 1991); 20 C.F.R. § 404.1527(d). Additionally, if the ALJ finds that the treating physician's evidence is not credible, he is not required to give it controlling weight. *Grindle*, 774 F. Supp. 1501, 1508 (N.D. Ill. 1991).

Dr. Fields diagnosed plaintiff with major depression with melancholia and assigned a GAF score of 30. He found plaintiff was oriented and did not complain of delusions, confusion, or problems with impulse control. He observed, moreover, no disturbance of speech, stream of conversation, or psychomotor activity. Plaintiff's complaint to Dr. Fields is the only complaint of depression in the record. In considering the psychiatric evaluation, the ALJ noted that plaintiff lied to Dr. Fields about past drug use, physical impairments, and the experience of hallucinations, and thus found that Dr. Fields' conclusions were based in large part on these incorrect underlying facts. Dr. Fields based his assessment primarily on the history of plaintiff's present illness that even he characterized as provided primarily by the plaintiff and "marginally reliable".

Plaintiff argues further that the ALJ improperly discounted the weight of the opinion of plaintiff's treating physician, Dr. Nelson. The ALJ indicated that she did not give Dr. Nelson's opinion controlling weight because it was internally inconsistent. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c). Dr. Nelson found that plaintiff could never bend due to a low back injury, stoop,

10

push, pull, perform fine manipulations, or reach above shoulder level. The doctor indicated that plaintiff could, however, carry 10 lbs. frequently and 20 lbs. occasionally, perform gross manipulations, and operate foot controls. The ALJ noted there is no mention as to why plaintiff cannot use his hands for fine manipulation. Moreover, there is no objective evidence supporting the limitations on plaintiff due to a back impairment.

As noted by the ALJ, Dr. Fields' and Dr. Nelson's reports are based primarily on plaintiff's statements, rather than objective evidence, and are mostly inconsistent with the evidence in record. In the instant case, the ALJ specifically rejected these reports based on plaintiff's subjective claims of physical pain and mental impairment as not credible because the ALJ determined that plaintiff is not credible. The ALJ is in the best position to observe testimony and determine credibility. *Zalewski v. Heckler*, 760 F.2d 160 (7th Cir. 1985). Given the record as a whole, the ALJ reasonably concluded that Dr. Fields' and Dr. Nelson's assessments were inconsistent with other substantial evidence in the record, insufficient to establish severe impairment in the face of substantial evidence to the contrary, and accordingly, were not entitled to special deference. The court concludes that the decision of the Commissioner to deny benefits is supported by substantial evidence and, therefore, affirms the decision.

## Conclusion

For the reasons set forth above the court denies plaintiff's motion for summary judgment, and affirms the decision of the Commissioner denying SSI benefits.

ENTER: July 2, 2003

_____
Robert W. Gettleman
United States District Judge

11